Good morning. May it please the Court, my name is Vicky Lai and I represent Cedric Alderman. This case involves Mr. Alderman's purely local possession of a bulletproof vest unconnected with any commercial transaction. The government contends that Congress can regulate this possession simply because the vest was sold and transported across a state line some three years before he gained possession. The Supreme Court has never held that the past movement of a good across a state line confers commerce jurisdiction, nor has it ever held that simply because a statute contains a jurisdictional element that is sufficient in and of itself to confer commerce jurisdiction. It's a pretty important factor, though, isn't it? Well, it's one of the factors, according to Lopez and Morrison. It's one of four factors, but the most important factor is whether what is being regulated is commerce. That has always been said to be the most important factor, not whether there is or is not a jurisdictional element. And, in fact, Judge McConnell said, United States v. Patent, which contains a persuasive discussion as to why this particular statute does not fall within Lopez's three commerce categories, he said that the jurisdictional element is neither sufficient nor necessary. And in this case, it was not sufficient. Then in the ‑‑ which gets me to my next question. How do you square that with ‑‑ how do you square that with our case? We have a whole series of cases that go back, for example, Latow, that says the presence of the jurisdictional element satisfied the concerns of Lopez, and we have other cases that basically say we really go back to the Scarborough kind of very minimal connection test. How can we come to a different conclusion in this case in light of that precedent? Well, I think that can be easily explained if we go back to what types of economic activity Congress can regulate when we're talking about intrastate activity. And the long line of Supreme Court cases say that Congress can regulate intrastate activity that is economic in itself or where that regulation is necessary to affect a larger preexisting comprehensive scheme. And those Ninth Circuit cases that talk about this minimal nexus fall into that second category. When you're in that second category, you not only have the Commerce Clause, you have the Necessary and Proper Clause, and therefore, because there's this preexisting regulatory scheme, Congress needs to reach that intrastate activity, regardless of its effect on interstate commerce, to affect a larger regulatory scheme. And that was discussed in the United States v. Stewart case when they were talking about the machine gun ban. And the Court said in that case that because the machine gun ban was an essential part of the Gun Control Act, it could be regulated even though the gun had never moved across state lines. But the difference here, and one of the differences it seems to be in the cases, is that we do have something that did move across state lines. Is that correct? Yes. The body armor did move across state lines. So one of the concerns that the Court has, the Supreme Court and other courts that have addressed various statutes, particularly in an as-applied challenge, where there's really not any evidence of actually even interstate commerce. So while that might not be enough alone to have the jurisdictional hook, here we actually did have undisputed evidence of it moving across. And then you also have these concerns about body armor and having it fall in improper hands because it really has one real significant legitimate use. What do we make of that very direct congressional reference to interstate commerce? Well, the congressional findings are a little bit odd because they don't talk about the effect that this crime has on interstate commerce as, for example, the Morrison case, the Violence Against Women Act talked about. These findings actually say that the movement in body armor affects the local crime. There's no discussion as to how the local crime of possession actually obstructs or harms interstate commerce at all. So I don't think the findings are helpful in this case, as Judge McConnell pointed out. And as to the fact that the body armor moved across State lines, that would be significant if this statute was actually attempting to regulate that movement, but the statute is not regulating the movement. It's regulating the present possession of body armor. And that jurisdictional hook is actually that it was sold or offered for sale in interstate commerce, and the problem with that jurisdictional hook is that it limits nothing. I cannot think of any commodity that is actually offered only to local customers. And so in this case, the jurisdictional hook really does not tell us anything, and it's insufficient. May I ask you about that? I think that you make a good point about the breadth of the offer for sale. If one of our challenges, of course, in looking at these kind of cases is that if we can construe something in a way that would not make it unconstitutional, we should do that. If we were to look only at the sold as opposed to the offer for sale, would you address that part of the argument? Well, sold in interstate commerce, usually when Congress uses the term of art in interstate commerce, it actually means you're within the flow of interstate commerce. So as I read sold in interstate commerce based on the prior Commerce Clause cases, that would mean that you would actually catch someone as they were selling it, but other than that, I don't know when it would apply. And again, it would be relevant if this statute or this prong of the statute were attempting to regulate that sale, but there is no restriction on selling body armor to violent felons. What is being regulated here is not the sale. What is being regulated is the present possession of body armor unconnected to any commercial transaction. There's nothing in the facts of this case to show how Mr. Alderman came to be in possession of that body armor. All we have is that the body armor moved across state lines some three years before he possessed it. Just to follow up on that. And one other thing, because it's hard to reconcile, of course, all of these cases, because, for example, the point you make now, it seemed to me that was addressed in Hannah, which was a Ninth Circuit case, in which it seemed to be enough that it moved at some time. But you're suggesting that it has to have more of a temporal element? No. In Hannah, that was the gun possession case. And, again, those cases are not in danger here because those cases rest on that second way of regulating interstate commerce, and that is if there is a preexisting comprehensive scheme, as in Raich, and you need to reach, Congress needs to reach interstate activity to affect that scheme, then only a minimal nexus is required. You don't need a substantial effect. When you don't have that comprehensive scheme, and I don't think the government has really ever said that there was this comprehensive scheme, then you have to go through the Lopez and Morrison analysis and determine whether this particular activity, possession of body armor, affects interstate commerce. And when we go through the test, the substantial effects test, as Judge McConnell did very thoroughly, it does not pass that test. So I think that the gun possession statutes are reconcilable with that second theory, which is almost an exception to Lopez and Morrison's substantial effect theory because it's more of a market theory. If you have a preexisting comprehensive scheme, then the interstate activity, even though it may not be economic, can be reached to affect that scheme under both the Commerce Clause and the Necessary and Proper Clause. And we don't have that here. All we have is Congress's attempt to nip local prime, the possession of body armor, unconnected to any commercial transaction. Now, you make reference to Judge McConnell's decision in Patton. And in the end, although he went through the Morrison factors and concluded there wasn't a substantial connection, in the end he relied on Scarborough to uphold the validity of the statute. And he pointed to the Tenth Circuit's own law. Okay, we have Jones, our own Ninth Circuit decision in the United States versus Jones. Why doesn't the Scarborough line of cases also come into play here? Well, again... How do you reconcile, as Judge McEwen tried to do, how do you reconcile all of these cases? Well, it took me a long time to get to this point because, as you say, the circuit cases sort of go all over the board, but the Supreme Court cases do not. How do you reconcile this? One, Scarborough is not a constitutional case. It's a statutory interpretation case. Two, it interpreted an element which is contained in the gun possession statutes, the affecting element. And the Supreme Court has made clear, and I think the Ninth Circuit has made clear, that when Congress uses that element, affecting commerce, it is signaling to the courts that it desires to reach the full extent of its commerce power. And the courts have said when Congress uses that element, as it does in the gun possession cases, it evidences an attempt to regulate as broad as it can under the Commerce Clause. So that's one difference. The second difference as to why Scarborough does not, is not controlling in this case, is because, again, the gun possession laws can be validated under that second market theory where there is a preexisting comprehensive scheme which exists, and you need to regulate that intrastate activity in order to affect that scheme. And under those cases, the effect need only be minimal. So you don't have to show a substantial effect. Which of our, how would we say, which of our Ninth Circuit cases, post-Morrison and post-Lopez, best supports the approach you would like us to take? I would say United States v. Cortez, which is cited in my brief as well as the government's brief, because what the government is arguing is that whenever you have a jurisdictional element in a statute, you don't need to go through the Lopez or Morrison test, substantial effects test. I don't think there's any real argument that this statute doesn't address the channels or instrumentalities of commerce. And that you can just, that there's this fourth test, this Scarborough test, in which once you have a jurisdictional element, all you have to show, even though the activity is non-economic and criminal, all you have to show is just some minimal nexus, some nexus such as that the commodity moved across state lines. Well, Cortez says no. It analyzed the carjacking statute, which had a jurisdictional element, and it said we have to read that statute in light of Lopez, and we have to analyze it in light of Lopez and Morrison and Jones, because it was also post-Jones. And it said that we can, the Ninth Circuit said that we can validate this statute, even though it only reaches intrastate carjacking, because one is an essential part of the preexisting regulatory scheme, the Car Theft Act. Two, the legislative findings indicate that carjacking does affect interstate commerce, and then also mention the jurisdictional hook. But all these factors combined, which is what Morrison is asking the Court to look at, validated the statute. It was not simply because there was a jurisdictional hook. And the key difference here from Cortez, then? The key difference here is that there is no comprehensive preexisting regulatory scheme that requires that Congress regulate the interstate possession of body armor. Does it make a difference that body armor could be said to have some connection to guns? They're not identical to guns, but if you read Congress's findings, they were concerned about, they talk about the shootout in North Hollywood, where the bank robbers had AK-47s, and they were all decked out in their body armor. I'd like to answer the question, but I'd also like to reserve some time. No, I'll give you some time. Okay. I mean, there's a clear regulation of the body armor, but it seems to be connected to an activity where there's substantial regulation. Well, to answer that question, I'd like to point you to Lopez, because in Lopez the Court was looking at 922Q, which has an even closer relationship to the gun possession laws, because it actually was a gun possession law, and the Court very quickly said we can't validate this as an essential part of a regulatory scheme, because all Congress is attempting to do here is to regulate guns within a very small proximity. It's not attempting to regulate the market. And if Lopez said that a gun possession statute was not an essential part of the Gun Control Act, I don't see how the possession of body armor, taking that away, would affect or harm in any way the Gun Control Act. And, in fact, I mean, you made a good point where you said the findings talked about the wearing of body armor in relation to a violent crime. But this statute, and that's clearly what Congress was attempting to get at, but the statute doesn't address that. This statute only addresses the possession of body armor. My client, in fact, was not wearing the body armor in relation to any crime. He was walking down the street. I'd like to reserve the rest of my time for rebuttal. Thank you. That's fine. Good afternoon. May it please the Court. My name is Helen Bruner, and I'm here representing the United States in this case. Let me start by saying that perhaps I, too, have struggled with trying to reconcile the various cases on the Commerce Clause in preparation of this argument. And in so doing, let me perhaps point first to or address first a couple of points made by opposing counsel here today and also primarily addressed in their reply brief. One distinction counsel made is between in-commerce cases and affecting commerce cases. And I think it's important to take, when one takes a look at the cases, particularly American building maintenance and the other cases cited in the reply brief, that all of those cases actually do not turn on the extent of Congress's power to enact those statutes, but rather what the jurisdictional hook, if you will, the jurisdictional element in each of these statutes meant. So what did in-commerce mean when it was coupled with the words engages in the Clayton Act that regulates the purchase of or the acquisition of a company by another company? What did that mean? In Jones as well, the Court was dealing with the question of what that jurisdictional hook meant in terms of the evidence that was before the Court. I think that's a very big distinction, because what that also says here is you look at this both from the standpoint of the evidence that is presented in a particular case and whether or not the jurisdictional hook coupled with the verb that it modifies will cover the conduct at issue. So that is one question. I think here this case is governed by Jones and Hannah and Cortez and Scarborough, the cases of this Court. It does have a jurisdictional hook, unlike Lopez, unlike the statute in Morrison, unlike the statute in Resch. So we start there. That jurisdictional hook requires that the conduct at issue here involve body armor that was sold in interstate commerce. So it in fact involves an economic activity by its very nature. If we don't have a sale or at least an offer for sale, and in this case the evidence before the Court is that this body armor was in fact sold by a company in California to a company in Washington State, whereby it was then further distributed to the Washington Department of Corrections. The language of the jurisdictional hook under 931, which is, as you noted, body armor sold or offered for sale in interstate or foreign commerce, that differs from the language of the jurisdictional hook under 922G, which was possessed in or affecting interstate commerce. It does, Your Honor. Does that make a difference, though? I don't think it does. It seems to be narrower. It is narrower, but that simply goes as well to the question of what conduct would be covered. I guess that was the point I was rather artfully trying to say in relying on the American building maintenance case. It goes to the question of this being sold in commerce. Yes, it was sold in commerce when it moved from California to Washington State, and that's really all that I think that narrow language really goes to. This is a very narrow statute. It isn't a grandiose scheme, and we can't we certainly can't suggest that they were that Congress here was trying to regulate every aspect of body armor by enacting this statute. But it shows to go to regulate this conduct by looking solely at possession. Now, it could have, it did not, but it could have set up a regulatory structure where there was a registration requirement for body armor. It did not do that. It simply is regulating those items of body armor that are moved to interstate commerce and that ultimately come then into the possession of a violent felon. And in this case, Mr. Alderman has a prior conviction for robbery. That's also not in dispute as a violent felony. He was wearing the body armor. Ms. Bruner. Yes, Your Honor. My question would be then, if I take your argument at face value, are you saying all you need is the stated jurisdictional that recites interstate commerce? That's all you need? Your Honor, I don't think I'm trying to, well, no, to answer your question directly. I'm not saying that that is all that's necessary. If Congress simply put something in a statute that's, put the words in commerce in a statute, I don't know whether that would be enough in and of itself. But what we have here is not only the words in commerce, but we have it coupled with an economic activity, that is to say, sale. I do think that. Okay, so let me ask you, what if the statute said that it's a crime for a violent felon to be in possession of French fries, which have been sold in interstate commerce? Would that be enough? I think it could be, Your Honor. You know, and again, that is a, that is perhaps a question of, how do I want to, I guess what I want to say, Your Honor, is I think there's a distinction, of course, again, between the reach to which Congress can legislate and whether or not there's wisdom to legislate in this area or a reason to prohibit someone from the economic activity of buying French fries as a convicted felon. I think that is a separate question, but if the court is asking me, could Congress regulate other types of materials simply by saying something was regulated, something is sold in interstate commerce, I do think that is within the reach of the Commerce Clause. Well, that seems to be a rather broad approach. It seems to me that the most difficult part of your case is there doesn't seem to be any preexisting scheme or plan for general regulation like for guns and for cars and carjacking. This seems different. Unless you can persuade us that actually the body armor issue really becomes important and a part of the gun scheme, I think you have a problem. Well, Your Honor, if I might, I think there's, I see your question as having two parts. First, with respect to the relationship to the gun scheme, I think that it does have a relationship here. That's certainly part of what Congress was stating in terms of the rationale for enacting the statute in the first place and the preamble language that it included. So I think that is true, but I also think that there is no case that has, at least that I am aware of and that I was able to find that turns on entirely on the question of whether or not a regulation is narrow to determine whether or not there is a jurisdictional basis under the Commerce Clause for Congress to enact it. I think this is a narrow statute and a narrow market, but it is regulating that market of interstate vests and where they ultimately come to rest. Your Honor mentioned you were going to ask me a question. I'm sorry. I didn't mean to. In saying that they can regulate the sale or transport, that doesn't seem to reach down to possession. Yes, Your Honor, but I think it's fair to say that the cases of the Supreme Court have said that where Congress acts within its Commerce Clause powers, it can certainly act as well to reach local activity that might, that was then where the item came to rest. Certainly that's true in the gun statute, even though, and I recognize the Court was talking about how broad the gun statute is. Certainly in the gun arena, a gun moving interstate and some years thereafter, in some cases many, many years thereafter, coming to rest in the possession of a felon by whatever means is enough for Congress to have had the ability to regulate. But I wanted to return for a moment, Your Honor, you mentioned cars, and I recognize that cars as an entity themselves may be broadly regulated, but carjacking is also a pretty narrow statute. It relates to the theft of a motor vehicle, and in this case, in the carjacking statute that was addressed in the Cortez case, it too referred only to in commerce language and not affecting commerce. So it isn't so much that there are, I guess what I'm trying to articulate here is there may be many, many cars and not so many pieces of body armor. Well, but there's a lot of car theft across state borders. There is, Your Honor, but what I guess I'm attempting to articulate here is that the carjacking statute itself reaches a very narrow segment of that theft, and as opposed to, for example, transportation and interstate commerce of the stolen vehicle itself, which would get us to yet another prong in the Commerce Clause. I also wanted to take a moment to ---- Let me ask you this before you do this. I know you've got something you want to say, but I'm still trying to struggle with how do you put all these cases together? That is, Lopez, Scarborough, Morrison, and our jurisprudence as a post. What's the analytical framework? I don't think you can say that you just look at the jurisdictional hook and that's enough. You have to fit it together. I do. As we attempted to do. It seems like our case law is trying to put all these cases together, and Cortez and I think Latu sort of make that effort. I think they do as well, Your Honor, and I don't think this particular statute falls outside the framework of that analysis either. I do want to say, though, I think part of the difficulty that we have in reconciling all of these cases is that we have in Lopez, in Morrison, in Raich, cases that are interpreting statutes that do not have a jurisdictional element. I say that because when you go to look, beginning with Lopez, one of the key issues, maybe not the only issue, but one of the key issues, and it carries through to Morrison, is the lack of a jurisdictional nexus. Why? Because it shows precisely how narrowly Congress intended that Commerce Clause power to reach. So that's one of the reasons why it is critical. Lopez Court also looked to the jurisdictional statement made by Congress when it enacted the statute. Here it may be meager, but it does address, again, what Congress had in mind. And what Congress doesn't have to have in mind is solely to regulate the sale of the product. We're clear on that. If that were the case, if there had to be an end result that was solely pecuniary, we wouldn't have Caminiti, which there was no financial gain that was involved in Caminiti. So you would say, then, that Scarborough just doesn't control here at all? Well, I would like Scarborough to control. That's not your position. I mean, whether you would like it to control or whether it does control is two different things. I think, Your Honor, that the analysis in Scarborough that's then adopted by this Court and applied in Hannah and Cortez and Jones, that that really is the framework by which we look at this case. There is a jurisdictional element. The jurisdictional element helps us to take a look at the broader question of did Congress have enough power to regulate in this market, because it is, in fact, regulating sale that ends up in the hands of someone else that is a prohibited person. And perhaps they could have done it, as I said earlier, more artfully by putting in a requirement for registration and perhaps a records check similar to firearms to prevent this material from getting into the hands of a convicted felon. I think, however, that that sort of perhaps belies the reality. As actually demonstrated by this case, we can trace this vest to the hands of the Washington State Department of Corrections. What we could not do is trace it, trace what happened to it from that point into the hands of Mr. Alderman. Otherwise, that would be part of the record as well. But I think Congress quite wisely decided that it would approach it from a slightly different fashion, and it still is economic in nature by regulating in this way. Does the Court have – I see that I'm at the time of my summing up. Does the Court have any other questions for me? Because I know it's been a long day for everyone. You had a point you were going to make before I interrupted you. Your Honor, I know I did, but by this point it has now gone out of my mind, and I'm sure when I sit down I'll wish I had made it. But I will turn the podium over to my opposing counsel. You know, all I can say is that both of you have argued very ably in what is quite an interesting and difficult area. I commend both of you. Thank you very much, Your Honor. I agree. I think both counsel and also the briefing has been very well done in this case. We appreciate that.  There was a few minutes for rebuttal. I didn't mean to. I just want to point out, I was reading Morrison last night, and the one phrase that really stuck in my mind was, the Court said, Thus far in our nation's history are cases that have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature. And there has been nothing that my government's counsel has said that has identified what is the economic nature of possession by a violent felon. She talks about the sale and tracking the sale, and that would be relevant if this was a sale or movement of body armor, but it's not regulating the sale or movement. It doesn't regulate the distribution, the production, the manufacturer. All it regulates is the intrastate possession by a violent felon of a bulletproof vest, and it's unconnected with any other crime or any commercial transaction. And I can't find in that regulation an economic activity. I think I'd also like to point out to the Court that the Jones v. United States case, the Supreme Court case, also discusses many of the questions that the Court had regarding the difference in language. In Jones, there was a jurisdictional element, but the Court read that jurisdictional element in light of Lopez. This was a post-Lopez, post-Morrison case. And the jurisdictional element in that case was used in a – it was an arson statute and was whether Bernahom used in interstate or foreign commerce or in an activity affecting interstate commerce. And the government's entire argument was that the statute was very broad because it used the affecting element. And the Court said, well, wait a minute. No, that's true. When Congress uses the affecting language, it does signal it's attempting to reach the broadest reach of its powers. But in this case, if we read it to reach every single building that used gas that moved across State lines, there would be no limitation, there would be no limits on Congress's commerce power. And in – they read that statute, the constitutional narrowing case, which – where they read that statute and said, in this case, the jurisdictional element is narrower than affecting because it uses – it's qualified. This is used in an activity affecting commerce. And we can't read that jurisdictional hook to reach every single private home simply because it uses gas that crossed the State line. And so we're going to read it to only reach buildings used for commercial purposes. I see my time is done. Right on the button. Thank you. Thank you. Thank you so much. We do appreciate your arguments. They're very good and very helpful. It's an interesting case. And the matter will be submitted.
judges: Fletcher, McKeown, Paez